**OLD REPUBLIC INSURANCE COMPANY and International Business & Mercantile Reassurance Company, Plaintiffs,**

v.

**FEDERAL CROP INSURANCE CORPORATION, Defendant.**

**No. 89 C 06371.**

United States District Court,
N.D. Illinois, E.D.

Aug. 3, 1990.

Keith D. Parr, Clark C. King, Jr., C. Joseph Yast, Lord, Bissell & Brook, Chicago, Ill., for plaintiffs.

Gail Ginsberg, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The plaintiffs Old Republic and International Business & Mercantile Reassurance Company ("Insurers") have brought this action against the Federal Crop Insurance Corporation ("FCIC") seeking a declaratory judgment that would prevent FCIC from recovering overpayments made to the Insurers. The Insurers have moved for judgment on the pleadings or, in the alternative, for summary judgment. The FCIC has filed a cross-motion for summary judgment on the same issues, seeking a judgment affirming the results of the informal administrative adjudication.[1] For the following reasons, we deny the Insurers' motions and we grant summary judgment in favor of the FCIC.

### Background

The FCIC is a corporation owned by the United States and governed by the Federal Crop Insurance Act ("the Insurance Act"), 7 U.S.C. § 1506 et seq. Before 1980, the FCIC sold crop insurance to producers directly through its own agents. In 1980, Congress amended the Insurance Act to authorize the FCIC to enter into reinsurance agreements with private insurance companies.

---

1. Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may move for judgment on the pleadings. However, if any matters outside of the pleadings are presented and admitted by the court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ. Proc. 12(c). Because we have considered exhibits submitted by the plaintiffs with their memorandum in support of their motion, we shall dispose of this action as a summary judgment under Fed.R.Civ.Proc. 56.

The Insurers are private insurance companies. They entered into reinsurance agreements with the FCIC for the 1984, 1985 and 1986 crop years. Old Republic was the lead entity and International Business and Mercantile Reassurance Company was one of its fronting companies whose policies were also reinsured under the agreements. Pursuant to the terms of each agreement, known as the Standard Reinsurance Agreements ("SARs"), the Insurers sold their own insurance to producers, and the FCIC provided reinsurance coverage for those policies.

Beginning in 1986 and continuing into 1987, the General Accounting Office ("GAO"), the Office of the Inspector General ("OIG") and, subsequently, the Compliance Division of the FCIC began reviewing some of the claims paid by the FCIC to the Insurers. These audits produced initial determinations by the FCIC of alleged overpayments to the Insurers, although the various investigating bodies were not in agreement as to the precise amounts of the overpayments. Commencing in the fall of 1987 and continuing through the spring of 1988, FCIC sent the Insurers notices stating that claims adjusted by the Insurers had been overpaid. FCIC asserted a right to recover the overpayments directly from the Insurers and threatened to offset the amount from monies otherwise due to the Insurers from FCIC. The FCIC also advised the Insurers that they could appeal these determinations pursuant to an informal appeals process set forth in 7 C.F.R. § 400.80 (later amended and renumbered as 7 C.F.R. § 400.149).

The Insurers appealed each of the FCIC's findings. Informal hearings were held in Washington, D.C. on April 25, 26 and 27, 1989, after which the FCIC made a final determination that, out of a total of 50 claims that it reviewed, overpayments had been made on fourteen in 1984, eighteen in 1985 and six in 1986. On July 5, 1989, the

FCIC issued three separate letters to the Insurers requesting payment for the 1984, 1985 and 1986 years, respectively. These letters requested that the Insurers correct the applicable Crop Year Accounting Report for each policy listed or pay the amount due by check. Old Republic has done neither and instead has challenged both the authority of the FCIC to readjust claims and recover overpayments and the sufficiency of the procedures by which the FCIC makes its determinations regarding overpayments.

### Discussion

#### A. *FCIC's Right to Recover the Overpayments*

■ The Insurers claim that the FCIC possesses neither the statutory nor the contractual right to recover overpayments from the Insurers. On the issue of contractual authority, the FCIC points out that a clause in the SAR for 1984 and 1985 holds FCIC "harmless for any loss that FCIC may incur as a result of the [plaintiffs'] conduct in the investigation, negotiation, defense or *handling* of any *claim*, or suit or in any dealing with its policy holder." (Section XVII(D)) (Emphasis added.) Also, the 1986 agreement expressly contemplates payment by the Insurers to the FCIC "as a result of a claim by the [plaintiffs] that is subsequently found not to have been due." (Section V(H)). We find that this language, though not as explicit as it might be, adequately shows that the SARs contemplated the reconsideration of claims and the recovery of wrongfully paid monies from the Insurers.[2]

In addition to its apparent contractual authority, the FCIC also points to statutory authority which further and independently establishes its right to recover wrongfully paid claims. It is well established that the government by appropriate action may recover funds "which its agents have wrongfully, erroneously or illegally paid." *Unit-*

---

**2.** Indeed, during its investigation, the OIG commented on the need to amend the SARs to specifically require recovery of overpaid claims. The Insurers rely on this recommendation as evidence that the SARs did not contemplate recovery of overpayments. However, the FCIC correctly maintains that the lack of a more specific provision simply affects the strength of the language concerning the possibility of recovering overpayment, but does not mean that such authority was expressly precluded by the omission.

ed States v. Wurts, 303 U.S. 414, 415, 58 S.Ct. 637, 638, 82 L.Ed. 932 (1938). The Federal Claims Collection Act of 1966, as amended by the Debt Collection Act of 1982, provides the statutory authority and initial mechanisms for heads of executive or legislative agencies to "try to collect a claim of the U.S. government for money or property arising out of the activities, or referred to, the agency." 31 U.S.C. § 3711(a)(1). Section 3716(a) of the Claims Collection Act further provides that, when other methods of trying to collect a claim from a person under section 3711(a) are unavailing, "the head of an ... agency may collect the debt by administrative offset." 31 U.S.C. § 3716(a). In addition, the FCIC relies on 7 C.F.R. § 3.23(a), issued under the authority of the Federal Claims Collection Act of 1966, as amended by the Debts Collection Act of 1982, which states that "whenever feasible, each agency *must* use ... administrative offset in accordance with 4 C.F.R. § 102.3 to collect debts due to the U.S." (Emphasis added.) This scheme shows that the government contemplates recovery of wrongful payments; clearly, the government would not make provisions for methods of recovery of debts if recovery itself was not contemplated.

The only time a government agency is barred from exercising its right to recover overpayments is when Congress has clearly manifested its intention to raise a statutory barrier. *Wurts*, 303 U.S. at 415, 58 S.Ct. at 638. This exception provides the basis upon which the Insurers ultimately rely in support of their contention the cited statutory authority does not apply to their reinsurance agreements with the FCIC. According to the Insurers, the specific statutory language and the legislative intent of the Federal Crop Insurance Act of 1982 negate the FCIC's otherwise valid authority to recover overpayments. First, the Insurers argue that the FCIC's readjustment of these claims violates the commission's statutory mandate that it act in accordance with "sound reinsurance principles." 7

U.S.C. § 1508(e). The Insurers assert that "sound reinsurance principles" do not permit the readjustment of claims and the recovery of overpayments directly from a primary insurer after the claims have been paid to third parties. Yet, the Insurers offer no authority or any evidence of industry practice to support that assertion. Instead, the Insurers simply comment: "Although disputes between reinsured companies and their reinsurers may and do at times arise, and are customarily resolved in arbitration, reinsurance is designed and intended to minimize and eliminate disputes between the reinsured company and its reinsurer." Mem. at 8. This comment does little to clarify how the Insurers would have us interpret the phrase "sound reinsurance principles" to mean that reinsurers may never readjust and recover wrongfully paid claims. Certainly the goal of minimizing disputes does not require a reinsurer to fully abdicate any opportunity to recover money paid on wrongful claims. Indeed, the Insurers acknowledge that disputes concerning claims do arise and are typically resolved by less formal means of adjudication such as arbitration.

The Insurers further maintain, however, that a decision allowing the FCIC to recover overpayments will defeat the Congressional purpose in enacting the Act, which was to encourage private sector involvement in the crop insurance business. Of course, if we grant the Insurers the blanket, unreviewable indemnity they seek with respect to all claims filed with the FCIC, we can imagine that private sector involvement in the crop insurance business might burgeon at an astronomical rate. Yet, it defies common sense to suppose, and the Insurers have offered no legislative history to suggest, that Congress intended to give a blank check to all private insurance companies in order to encourage participation in the program, regardless of whether claims are later discovered to have been paid based on wrongful or negligent adjustment by the reinsured companies.[3] The

---

**3.** The private companies under the program, like any other reinsureds, are entitled to indemnification only to the extent to which they are

reinsured. At the heart of this dispute are findings that the Insurers have wrongfully and negligently paid out the claims in question in con-

FCIC's actions will serve only to discourage such potentially wrongful or negligent adjustment practices by insurance companies participating in the federal program. This is a goal which the FCIC *should* pursue to efficiently administer its resources. In our view, these goals accord with what Congress meant by "sound reinsurance principles." Accordingly, we find that FCIC is entitled to recover wrongfully paid funds directly from the Insurers, and may use offsets for the recovery of such funds if necessary.

### B. *Due Process*

■ The Insurers next claim that even if the FCIC is entitled to recover overpayments, the FCIC's procedures for making final overpayment and underpayment determinations lack the requisites of due process. The three often-cited factors needed to evaluate the due process sufficiency of an administrative determination were articulated by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such an interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural safeguards would entail.

*Id.* at 335, 96 S.Ct. at 903; *Mayo v. Lane*, 867 F.2d 374, 384 (7th Cir.1989). The test in *Mathews* balances the government's interests with the private interests involved. This balance will sometimes result in discarding certain procedural safeguards for the benefit of economy, efficiency and administrative discretion.

The private interests affected by this action are contractual monetary obligations totaling $337,558.00. Such an interest is not as compelling as the kind of interest that has been held to require a full trial-type evidentiary hearing before any deprivation. For example, in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the plaintiff's interest in continued receipt of welfare benefits was deemed substantial enough to warrant an evidentiary hearing in light of the fact the denial of benefits would deprive the recipient of "the very means by which to live." *Id.* at 264, 90 S.Ct. at 1018. The private contractual interest in this case also is not as substantial as other private interests, such as the right to Social Security disability benefits, the deprivation of which does not require a full-trial type hearing. Thus, the FCIC was not inherently obligated to provide a full scale formal proceeding in making its determinations.

The next factor for us to consider, then, is the "fairness and reliability of the procedures used and the probable value, if any, of additional procedural safeguards." *Id.* 424 U.S. at 343, 96 S.Ct. at 907 (1976). Regarding the reliability of the procedures, we must focus on the "risk inherent in the truth finding process as applied to a generality of the cases, not the rare exceptions." *Id.* at 344, 96 S.Ct. at 907. Accordingly, we shall look at the adequacy of the FCIC's procedures in generally resolving questions regarding overpayments.

At the outset we observe that the Insurers were afforded virtually all of the procedural due process requirements delineated under the APA for formal adjudication and recognized by the Supreme Court in *Goldberg.* The Insurers were given notice of the hearing, an opportunity to participate in the hearing, an impartial decisionmaker, right to counsel, right to present oral and written evidence, right to submit proposed findings, conclusions and exceptions, the compiling of a record on which the decision would be based, and a hearing on the record. *Compare* Administrative Procedure Act, 5 U.S.C. §§ 554–57. Notwithstanding all of this, the Insurers allege that the informal hearing process was pro-

travention of the express terms of the applicable reinsurance agreements and have improperly

received the benefit of reimbursement by the FCIC.

cedurally deficient in two specific respects.[4]

### 1) Lack of Joinder of the Producers

The Insurers first argue that the FCIC's failure to join the producers, in accordance with Rule 19 of the Federal Rules of Civil Procedure, rendered the administrative proceedings constitutionally unfair. Rule 19 requires in relevant part that persons who are

> (a) ... subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may ... (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.
>
> (b) If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the person will have an adequate remedy if the action is dismissed for nonjoinder.

The Insurers contend that the application of Rule 19 would have required dismissal of the administrative action for want of an indispensable party. Mem. at 11.

As we have already concluded, in the context of an administrative hearing concerning private contractual interests, procedural due process often requires neither a full trial nor its full complement of procedural rules. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Thus, it is not apparent that the Federal Rules of Civil Procedure should even apply to the kind of administrative hearing at issue in this case. The Insurers, however, maintain that Rule 19 is not a minor procedural rule of convenience, but must be applied to any proceeding on the ground that Rule 19 simply expresses the parameters of a more fundamental due process principle that a determination should be binding on a party to a proceeding only where all parties indispensable to the proceeding are joined as parties. *See, e.g., Western Union Telegraph Co. v. Commonwealth of Pennsylvania,* 368 U.S. 71, 82 S.Ct. 199, 7 L.Ed.2d 139 (1961).

Even if we accept that proposition, and consider Rule 19 to be a fundamental procedural safeguard, the application of Rule 19 in this case would not have required joinder of the producers. The producers have no direct interest in the outcome of any contractual dispute between the Insurers and the FCIC. "An ordinary contract of reinsurance, *in the absence of provisions to the contrary,* operates solely as between the reinsurer and the reinsured." *Ainsworth v. General Reinsurance Corporation,* 751 F.2d 962, 965 (8th Cir.1985). The producers are not parties to the SARs and the SARs contain no provisions that create any direct obligations between the producers and the FCIC. The producers possess an interest in the outcome of the administrative proceedings only to the extent that a decision adverse to the Insurers may prompt the Insurers to take a separate action to recoup monies from the producers. While such an interest may be suffi-

---

**4.** The Insurers have also complained that they were denied due process in part because the FCIC failed to give them a hearing on the record. That complaint does not accurately describe the true nature of this alleged violation. The FCIC did allow for a hearing on the record—evidenced by the transcript submitted by the Insurers as an exhibit. All that the FCIC failed to do was provide and pay for such a record to be compiled. The Insurers were responsible, at their own election and expense, for obtaining a court reporter and having the proceedings transcribed.

cient to make the producers' Rule 19(a) parties to be joined if feasible, standing alone, that kind of interest does not compel the conclusion that the producers are indispensable. *See generally,* 7 Wright, Miller and Kane, *Federal Practice and Procedure,* § 1613 (1986).

The Insurers further maintain, however, that the failure to join the producers has subjected the Insurers to a substantial risk of incurring inconsistent obligations. Based on the presumably likely event that they will seek relief from the impact of the overpayment determinations by making claims against the producers, the Insurers contend that the producers would have every incentive to challenge each claim because the FCIC's administrative determinations are not binding on the producers. According to the Insurers, inconsistent determinations as to the fact or amount of any overpayment would result on virtually every claim.

Although the Insurers offer no supporting reasoning for that broad assertion, we can imagine a certain potential for inconsistency in future determinations, since as the record of the administrative proceedings reflects, the adjustment of claims under the program is not an exact science and is clearly subject to reasonable differences of opinion. Thus, a subsequent full-scale adjudication between the Insurers and the producers could result in a different resolution regarding overpayment.

Yet, our consideration of the risk that the Insurers will incur inconsistent obligations does not end with the likelihood that a claim, if brought, would result in an inconsistent determination. Under Rule 19 we must find that the risk of incurring such an inconsistent obligation is substantial—more than a theoretical possibility.

*See State Farm Ins. Co. v. Mid–Continent Casualty Co.,* 518 F.2d 292, 295 (10th Cir. 1975). Thus, we must also consider the likelihood that the producers will challenge the readjustments of their claims.

The producers are certainly unlikely to contest the underpayment determinations that will ultimately benefit them. And we do not share the Insurers' certainty that the producers will challenge every claim by the Insurers for reimbursement based simply on the belief that the FCIC determinations would not bind them.[5] The record discloses that the FCIC's overpayment and underpayment determinations on most individual claims involved relatively small readjustments of the proper claim amount as a whole. In most cases, then, any challenge would involve a marginal amount of money; the stakes are not nearly as great as if the Insurers were claiming reimbursement from the producers for the entire amount that had been paid. Further, though the FCIC determinations may not be binding upon the producers, the Insurers will undoubtedly apprise the producers of the FCIC's findings and the evidence upon which they were based. Thus, the producers will have a benchmark against which to judge whether a challenge is advisable. Given the potential for inconsistency before another factfinder, a producer who wishes to contest the overpayment figure must consider the real possibility that subsequent litigation may result in a determination that she might be held to owe even more than the amount found by the FCIC to have been overpaid (in addition to bearing the litigation costs of bringing a challenge). Based on these considerations, we find the Insurers' assessment of the producers' incentive to seek new adjudications on every claim to be greatly exaggerated.[6]

5. We accept for the purposes of this opinion, the assertion by both parties that the producers will not be bound in any way by the FCIC proceeding. The question whether nonmutual collateral estoppel might affect any subsequent litigation between the Insurers and the producers is one that both sides either have considered and rejected, or failed to consider.

6. The transcript of the FCIC hearing further discloses a factor that might additionally reduce

a producer's incentive to contest the overpayment claim. It appears that the producers who were overpaid were also subject to a corresponding increase in the amount of their premiums. *See, e.g.,* Trans. at 58–59. Therefore, if they are required to return the overpayment, they may also have the right to obtain an offset in the amount of the increase in their premiums.

We further note that a number of the FCIC's overpayment determinations were based on the

Indeed, in those instances where we would have considered the chance of a challenge to be greatest—where the overpayment determinations were based on suspected fraud on the part of individual producers, without complicity of the Insurers—the FCIC has made clear that it will not offset the amount of these allegedly fraudulent claims until the Insurers recover these amounts from the producers. In such cases the FCIC expects reimbursement from the Insurers only after the funds have been recovered from the producers. Accordingly, we conclude that the Insurers have failed to show that the risk of incurring inconsistent obligations, to the extent it exists, is so substantial as to render the producers necessary parties under Rule 19(a), let alone indispensable parties under Rule 19(b).

### 2) Lack of Subpoena Authority

The Insurers next argue that the procedures employed by the FCIC were unfair because the FCIC lacked the authority and consequently failed to issue subpoenas to assure that the testimony and the records of the producers and third parties would be available during the determination proceedings. At the outset, we observe that the FCIC did not forbid the production of witnesses and evidence by the Insurers. Yet, the Insurers have made no showing that they even attempted to bring forward any of the evidence they argue was so important to this case. Further, we do not believe that due process mandates the availability of compulsory process for this kind of informal administrative proceeding, which provides an otherwise adequate forum for resolving these readjustment disputes. It is evident from the transcript of the hearings that both the FCIC and the Insurers had the opportunity to interview producers and other witnesses for the purposes of the hearing, and to introduce the information gained from those interviews and any other information gained from these individuals over the years as evidence for consideration by the hearing officer.

The Insureds essentially maintain, however, that the absence of compulsory process rendered the proceeding inherently reliable. Yet, the Insurers have failed to make clear how the compelled testimony of the producers would have made the proceedings any more reliable. All that the Insurers offer in support of their contention that the proceedings were unreliable is a catalogue of the instances in which the independent and final determinations made by the FCIC were either inconsistent with its initial determination or with the earlier allegations of the other auditing bodies. Surely the Insurers do not mean to suggest that the availability of compulsory process would have or even should have ensured a final assessment that was the same as the preliminary determinations. It defies logic to claim, in essence, that the FCIC proceeding was unreliable and therefore a denial of due process simply because it did not rubber stamp the preliminary findings of the various investigatory entities. Such an argument ignores the fact that the fundamental purpose for conducting an adjudication is to finally resolve contested matters after the parties have had an opportunity to respond. Indeed, the Insurers' response and participation at the administrative hearing, in accordance with due process, contributed substantially to the "inconsistent" outcome being reached.

Even if the FCIC's procedures do entail the risk of some error for want of compulsory process of nonparties, we are also obligated to assess "the administrative burdens and other societal costs that would be associated with requiring any additional procedural safeguards." *Mathews*, 424

---

Insurers' negligent or wrongful failure to comply with terms and conditions of the SARs, which required among other things adherence to the claims adjustment practices procedures set forth in crop-specific handbooks and manuals. Simply because the Insurers are obligated to return reinsurance payments received in contravention of the terms of the reinsurance contracts does not necessarily mean that the Insurers will then be entitled to full recoupment from the producers based on the underlying contracts of insurance. Thus, any variance between the two determinations would not properly be regarded as inconsistent. Since the parties' submissions do not adequately speak to this point, we are unable to satisfactorily assess the degree to which it affects the inconsistency determination.

U.S. at 347, 96 S.Ct. at 909. We must further keep in mind that "the cost of protecting those that the [hearing] has identified as likely to be undeserving may come out of the pockets of the deserving since resources for any particular [program] are not unlimited." *Id.* Early in their argument against the FCIC's right to recover overpayments, the Insurers characterized the proceedings to which they were subject as "costly and protracted." Mem. at 8. Yet, the Insurers acknowledge that, with the additional procedures they seek, the hearings on their claims would not have taken three days, but much longer—up to three weeks.[7] Mem. at 16 n. 5. Particularly in light of the fact that the amount of any individual readjustment was fairly modest, it is difficult to find a benefit that corresponds to the exponential increase in time and money that the Insurers' desired procedures would add to the final determination process. To the extent the proceedings involved questions of interpretation of the SARs and the manner of the Insurers' compliance with the applicable regulations and adjustment practices, we do not see how compulsory process would have resulted in added benefits. To the extent the determination required findings of fact, the record establishes that the administrative proceeding provided ample evidence and argument for the hearing examiner to fairly and accurately make his determinations. Again, the Insurers have failed to specify or even to suggest what further, non-redundant evidence might have been derived from the compelled testimony and evidence of the producers and third parties. Even assuming such additional evidence existed, we do not believe its introduction would have contributed so substantially to the proceedings that its absence should be deemed to have rendered the proceedings fundamentally unreliable.

In addition, the third factor of the *Mathews* test is not just weighing of burdens and costs. As the Court in *Mathews* stated, it is also a "determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action to assure fairness." *Id.* at 349, 96 S.Ct. at 909. In making this determination, it is necessary to "give substantial weight to the good faith judgments of the individuals charged by Congress with the administration of programs." *Id.* The good faith of the FCIC is evidenced here by the nature and extent of the procedural safeguards that the Insurers did in fact enjoy.[8] We therefore find that the cost that would be associated with providing the additional procedural measures that the Insurers seek outweighs the possible benefit of offsetting any marginal risk of factual error in the final determination.

■ Having found that the FCIC possessed the right to recover overpayments and that the FCIC's determination proceedings to which the Insurers were made parties conformed to the requisites of due process, *see* 5 U.S.C. § 706(2)(B)–(D), all that remains is consideration of the questions whether the final action by the FCIC was arbitrary and capricious or otherwise not in accordance with law, and whether it

---

**7.** In a similar vein, the Insurers have challenged the due process sufficiency of the administrative hearing on the ground that the procedures afforded were "rudimentary" for want of the applicability of the rules of evidence, and the availability of subpoena power and joinder of each of the producers whose claims were at issue. Reply at 4. Yet, the Insurers have acknowledged that insurers and reinsurers view arbitration typically as the best adjudicatory means by which to resolve their disputes. Arbitration affords none of the procedural measures which the Insurers now claim are necessary to a fair resolution of their dispute, in part to avoid protracted and costly proceedings.

**8.** The Insurers have filed additional authority which includes some procedures which may be adopted by the USDA (and in turn by the FCIC). According to the Insurers, these proposed procedures show that the FCIC has decided to finally provide due process in the handling of claims. We find the USDA proposal irrelevant insofar as it pertains only to the mechanism by which the agency will proceed to determine fraudulent claims and to impose civil penalties and assessments under the Program Fraud Civil Remedies Act of 1986. The Insurers have made no claim which would invoke the substantive and procedural provisions of that Act. Further, the mere fact that the USDA is seeking to establish new procedures to handle certain disputes has no bearing on the question of the constitutional adequacy of the procedures in current use.

was unwarranted by the facts to the extent that the facts are subject to trial *de novo* by us. 5 U.S.C. § 706(2)(A) and (F).[9] Because we believe that the fact-finding procedures used by the FCIC in the adjudicative informal hearings were adequate to the task, we do not believe the facts in this case should be subject to trial *de novo* by us. Having carefully and deferentially reviewed the merits of the final FCIC determinations made by the FCIC Acting Deputy Manager on May 23, 1989, we find that the FCIC actions were adequately supported by the evidence and by reasonable interpretation and implementation of FCIC regulations. Accordingly the determinations were neither arbitrary and capricious nor otherwise not in accordance with law.

## Conclusion

The Insurers' motion for judgment on the pleadings or alternatively for summary judgment is denied. We grant summary judgment in favor of the FCIC. It is so ordered.

---

**9.** Apparently, this case was not subject to 5 U.S.C. §§ 556–57. Therefore, 5 U.S.C. § 706(2)(E) would not apply.