**OLD REPUBLIC INSURANCE COMPANY and International Business & Mercantile Reassurance Company, Plaintiffs–Appellants,**

v.

**FEDERAL CROP INSURANCE CORPORATION, Defendant–Appellee.**

No. 90–2933.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 12, 1991.

Decided Nov. 4, 1991.

C. Joseph Yast, Keith D. Parr (argued), Clark C. King, Lord, Bissell & Brook, Chicago, Ill., for plaintiffs-appellants.

Gail C. Ginsberg, Asst. U.S. Atty., Fred Foreman, U.S. Atty., Crim. Div., Nancy K. Needles, Asst. U.S. Atty., Civ. Div., Appellate Section, Chicago, Ill., William Kanter, John S. Koppel (argued), Civ.Div., Appellate Section, Peter Bonner, Dept. of Agriculture, Office of the General Counsel, Washington, D.C., for defendant-appellee.

Before BAUER, Chief Judge,
CUMMINGS and COFFEY, Circuit Judges.

BAUER, Chief Judge.

In this appeal, we review the district court's order holding that the Federal Crop Insurance Corporation ("FCIC") is entitled to recover overpayments made to insurers under the Federal Crop Insurance Program. Because we believe that the district court properly found that the FCIC possessed statutory and contractual authority to collect the overpayments and that the agency's procedures satisfied the requirements of due process, we affirm.

## I.

The Federal Crop Insurance Act, 7 U.S.C. §§ 1501–1520 (1988), directs the FCIC, a corporation owned by the United States under the jurisdiction of the United States Department of Agriculture ("USDA"), to enlist private insurance companies in the Federal Crop Insurance Program. The agency is directed to reinsure crop loss policies issued by private insurers. The reinsurance agreements between the FCIC and the private companies are to be governed by "sound reinsurance principles"[1] and require that FCIC procedures be used to adjust losses on all reinsured policies. 7 U.S.C. § 1508(e); Standard Reinsurance Agreement 1984–85, at 4–5 *in* Stipulated Joint Appendix 16–17, 50.

Plaintiffs–Appellants, Old Republic Insurance Company and International Business and Mercantile Reinsurance Company ("Old Republic"), and the FCIC entered into reinsurance agreements for the 1984, 1985, and 1986 crop years. Pursuant to these agreements, Old Republic sold crop insurance to farmers, and the FCIC reinsured these policies. In 1986 and 1987, the General Accounting Office ("GAO") and the USDA's Office of the Inspector General ("OIG") began reviewing claims paid by FCIC to Old Republic. Responding to the GAO's investigation, the FCIC's Compliance Division also began reviewing claims. As a result of these audits, the FCIC made an initial determination that it had overpaid some claims to Old Republic.

In 1987 and 1988, the FCIC notified Old Republic that claims Old Republic had adjusted had been overpaid. The agency asserted a right to recover overpayments directly from Old Republic (without involving the farmer-insureds), and to offset the amounts against monies otherwise due Old Republic from the FCIC. The agency also informed Old Republic that it could appeal the FCIC's findings through an informal appeals process set forth in 7 C.F.R. § 400.80 (1987) (later amended and renumbered as 7 C.F.R. § 400.149 (1988)).[2]

Old Republic appealed each of the FCIC's findings. After three days of informal hearings, the FCIC determined that of fifty audited claims, it had overpaid fourteen of them in 1984, eighteen in 1985, and six in 1986. On July 5, 1989, the FCIC sent letters to Old Republic demanding repayment. Each of the demand letters included attachments detailing each overpaid claim, the reason for the overpayment (such as error by Old Republic's adjustor or insured's fraud), and any calculations performed by the FCIC. In cases involving fraud, the

---

**1.** Federal Crop Insurance Act of 1980, 7 U.S.C. § 1508(e) (1988).

**2.** 7 C.F.R. § 400.80 provided that
[a]ll disputes arising under ... the Agreement entered into by the company and the Corporation [FCIC] must be submitted for decision to the Manager of the Corporation. The decision of the Manager shall be final unless the company requests reconsideration in writing within 30 days of the receipt of the decision. Any hearing provided by the Corporation will be of an informal nature and the rules of evidence will not apply.
The amended regulation, 7 C.F.R. § 400.149 is essentially the same except that it provides a longer period of time to appeal the Manager's decision (45 days instead of 30). It retains the identical provision for an informal hearing.

attachment noted that these amounts were not due until Old Republic recovered from the insureds.[3]

The FCIC offered several alternative repayment options. It expressed a preference for a correction of the applicable Crop Year Accounting Report for each policy (so that the FCIC's actuarial statistics would reflect the corrections). But Old Republic could also pay the agency by check, or, if it was unable to pay the amount due in full, it could make special arrangements with the FCIC. The FCIC informed Old Republic that if it pursued none of these options, the FCIC would offset the overpayments against monies otherwise due Old Republic.

Old Republic made no payments and filed this declaratory action. It challenges the FCIC's authority to readjust claims, the adequacy of the administrative procedure used to review the overpayments, and the FCIC's determination that the overpayments are debts and, therefore, subject to administrative offset. Old Republic moved for a judgment on the pleadings, or in the alternative, summary judgment. The FCIC filed a cross-motion for summary judgment, seeking an affirmation of its authority to collect the overpayments and of its administrative findings. The district court found that the FCIC had both contractual and statutory authority to recover the overpayments, and that the agency's procedures were constitutionally adequate. 746 F.Supp. 767 (N.D.Ill.1990). The district court also reviewed the merits of the FCIC's determinations. It found they were supported by the evidence and reasonable applications of the governing law, and were, therefore, not arbitrary and capricious. *Id.* at 776. The district court granted the FCIC's cross-motion for summary judgment. Old Republic appealed.

## II.

On appeal, Old Republic raises a number of arguments. It renews its challenge to the FCIC's authority to readjust claims under the reinsurance agreements and to offset overpayments against monies otherwise due Old Republic. Old Republic argues that the overpayments are not "debts" due the FCIC, and, therefore, not subject to administrative offset. Old Republic asserts that recovering overpayments from insurers without involving the insureds is not consistent with "sound reinsurance principles" as required by the Federal Crop Insurance Act of 1980, 7 U.S.C. § 1508(e) (1988) ("FCIA"). Therefore, it contends that the FCIA is a statutory bar to the government's common law right to recover wrongfully paid funds under *United States v. Wurts*, 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932 (1938). Even if the FCIC has authority to recoup the funds, Old Republic argues that the administrative procedures it employed to determine the amount of the overpayments did not comport with the minimum requirements of due process. Finally, Old Republic objects to the district court's affirmation of the FCIC's administrative findings on the merits. We shall discuss each of these challenges in turn.

### A. *Standard of Review*

It is well established that review of a district court's grant of summary judgment is *de novo. See, e.g. La Preferida, Inc. v. Cerveceria Modelo, S.A.*, 914 F.2d 900, 905 (7th Cir.1990). In order to uphold a grant of summary judgment, we must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion," *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir.1990), and conclude there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *First Wisconsin Trust Co. v. Schroud*, 916 F.2d 394, 398 (7th Cir. 1990). Summary judgment is only appropriate when the record reveals that no reasonable jury could find for the nonmoving

---

**3.** FCIC Bulletin No. MGR–001, promulgated January 15, 1988, informed insurers that the FCIC would not expect repayment of any overpayments made as a result of an insured's fraud until the insurer recovered from the insured.

The Bulletin required the insurers to make "every reasonable attempt" to recover the overpayments, and provided that some recovery costs could be deducted from amounts due the FCIC.

party. *Doe v. Allied–Signal, Inc.*, 925 F.2d 1007, 1008 (7th Cir.1991).

When a contract is the subject of a summary judgment motion, "the appropriateness of summary judgment will turn on the clarity of the contract terms under scrutiny. Only if a term is completely unambiguous will a court be able to conclusively establish its meaning as a matter of law." *International Surplus Lines Insur. Co. v. Fireman's Fund Insur. Co.*, No. 88–C320, 1991 WL 74582, at *3, 1991 U.S.Dist. LEXIS 6139, at *7 (N.D.Ill. May 4, 1991). But the question of whether a contract is ambiguous is one of law for the court. *Id.*

### B. FCIC's Authority to Collect Overpayments

In this case, the district court determined that the contractual language "adequately shows that the [Agreements] contemplated the reconsideration of claims and the recovery of wrongfully paid monies from the insurers." *Old Republic Ins. Co. v. Federal Crop Ins. Corp.*, 746 F.Supp. 767, 769 (N.D.Ill.1990). The district court relied on a clause in the 1984, 1985, and 1986 agreements that required Old Republic to hold the FCIC "harmless for any loss that the FCIC may incur as a result of [Old Republic's] conduct in the investigation, negotiation, defense or handling of any claim or suit or in any dealing with its policy holder." *Id.* The district court also looked to a clause in the 1986 agreement that provided that Old Republic must pay the FCIC interest "for any amount paid to the Company as the result of a claim by the

Company that is subsequently found not to have been due the Company." [4] *See id.* It found that although the language was "not as explicit as it might be, [it] adequately shows that the [agreements] contemplated the reconsideration of claims and the recovery of wrongfully paid monies from the Insurers." *Id.* [5]

After our own review of the contracts at issue, we agree with the district court's interpretation of these terms, and find that other terms in the agreements bolster its conclusion. The 1984 and 1985 Agreement, Section XI, provides as follows:

> FCIC ... or their duly authorized representatives shall have access for the purposes of investigation, audit, and examination to any books, documents, papers and records of the Company that are pertinent to the business reinsured, including premiums and claims paid or payable under this Agreement. Records relating to premiums shall be retained and available for three (3) years after final adjustment of premiums, and to reinsurance claims three (3) years after final adjustment of such claims.

This language clearly contemplates that the FCIC may audit finally paid claims. The plain meaning of the term audit is "[a]n examination of records or accounts to check their accuracy; or an adjustment or correction of accounts." American Heritage Dictionary 141 (2d ed. 1982). If the FCIC had no authority to correct payments made on the basis of inaccurate records, why would it reserve the right to audit Old Republic's records? This provision is

---

4. In its brief, Old Republic makes much of the district court's deletion of the words "the Company" at the end of this contractual term in its Order. "The district court first rewrote the agreements by ... deleting the words 'the Company' from the end of the sentence taken from the 1986 Agreement." Appellants' Brief at 15. We find that the district court's deletion in no way alters the meaning of the quoted language, and Old Republic's assertion that the district court's quotations are "erroneous" is without merit.

5. Old Republic contends that the FCIC's 1988 amendment to its reinsurance contracts (pursuant to an OIG recommendation) to include

more specific language permitting recovery proves that the original contracts (those between the parties in the case at bar) did not permit overpayment recovery. We find this contention is without merit. As the OIG noted, "in order to preclude any question" regarding the FCIC's authority to recover overpayments, the Standard Reinsurance Agreement should be amended. USDA Audit Report, June 1987. Administrative Record at 05847. We agree with the district court's ruling that "the lack of a more specific provision simply affects the strength of the language concerning the possibility of recovering overpayment, but does not mean that such authority was expressly precluded by the omission." 746 F.Supp. at 769 n. 2.

present in all three Agreements at issue here (1984, 1985, and 1986). Presumably pursuant to this provision, the FCIC has reviewed claims only within three years of the date of review (1987).

Furthermore, even if we were not satisfied that the district court properly interpreted the FCIC's contractual authority to collect the overpayments, the agency has statutory and common law authority to do so. Under the Federal Claims Collection Act of 1966, as amended by the Debt Collection Act of 1982, 31 U.S.C. § 3711(a)(1) (1988) ("DCA"), executive and legislative agencies are given the authority to collect monetary claims of the United States arising out of activities of the agency. In this case, the FCIC's audit of Old Republic's records revealed that it overpaid Old Republic on some insurance policies, and Old Republic underpaid some of its insureds. The primary source of these mistaken payments appears to have been adjustment errors Old Republic made.[6]

Old Republic does not explain why this statute does not authorize the FCIC's collection efforts in this case. It asserts that the amounts due the FCIC are not "debts due the United States" as required in 7 C.F.R. § 3.23(a) (1990) (the Department of Agriculture regulation implementing the DCA). Old Republic offers no authority or reasoning for its assertion, and the district court correctly found that it is without merit. Even if this statute did not provide express authority for the FCIC to recover the overpayments, the recovery is authorized by the government's common law right to recover improperly paid funds. *See Wurts,* 303 U.S. at 414, 58 S.Ct. at 637.

■ A government agency is entitled to recover improperly paid funds unless there is an explicit statutory bar. *Wurts,* 303 U.S. at 416, 58 S.Ct. at 638. *See also Bechtel v. Pension Benefit Guar. Corp.,*

781 F.2d 906, 907 (D.C.Cir.1986) ("The government's right to recoup funds owing to it is beyond dispute and will not be deemed to have been abandoned unless Congress has clearly manifested its intention to raise a statutory barrier.") Old Republic contends that the readjustment of claims after it has paid insureds' claims is not consistent with "sound reinsurance principles" as required by the FCIA. Therefore, the argument seems to be, recovery is barred by statute. Old Republic implies that by requiring repayment of funds paid on improperly adjusted claims, the FCIC is transferring the risk it was supposed to bear back to Old Republic. It argues this transference is not in accord with sound reinsurance principles.

Yet this is not what the FCIC has done. Instead, the FCIC reviewed Old Republic's records and determined that Old Republic made errors in their adjustment process. These errors resulted in FCIC overpayments. Thus, the FCIC requires Old Republic to refund these erroneous payments. Old Republic appears to be suggesting that regardless of an insurer's negligent or deficient claims adjustment process, it is entitled to keep whatever monies it receives from the FCIC. This argument is analogous to a taxpayer claiming that he is entitled to his tax refund, even though the Internal Revenue Service determines through an audit procedure that the taxpayer made mistakes in his return. The FCIC audited Old Republic's records and found errors. Requiring that Old Republic refund the monies paid on the basis of these errors, as the district court found, "will only serve to discourage such potentially wrongful or negligent adjustment practices by insurance companies participating in the federal program. This is a goal which the FCIC *should* pursue to efficiently administer its resources." 746 F.Supp. at 771.[7]

---

6. In cases where the overpayments were caused by insured's fraud, the FCIC has provided that Old Republic is not required to repay the FCIC until Old Republic recovers from the insureds. FCIC Bulletin No. MGR–001. *See, e.g.,* Stipulated Joint Appendix at 86.

7. The GAO made similar findings in its June, 1987 Audit Report No. 05608–2–Te:

> If identified indemnity overpayments by reinsured companies, most of which are subsequently reimbursed by FCIC, are not recovered from the companies, there is no incentive for the reinsured companies to improve their loss adjustment operations. In fact, it

■ Old Republic also argues that permitting the FCIC to readjust claims without involving the farmer-insureds is inconsistent with "sound reinsurance principles." It provides no authority for the position that third-party insureds must be joined in contract actions between an insurer and reinsurer. "[A] reinsurance contract operates solely between the reinsurer and the reinsured...." 19 Couch on Insurance § 80:1, at 624 (2d ed. 1983). The contracts Old Republic has with its farmer-insureds are "totally distinct and disconnected" from the contracts it has with the FCIC, its reinsurer. *Reid v. Ruffin*, 314 Pa.Super. 46, 460 A.2d 757 (1983).

This dispute involves charges that Old Republic breached its contract with the FCIC through its deficient adjustment of claims. If these charges are true, Old Republic is liable to the FCIC for failing to fulfill its contractual obligations. It cannot involve the farmer-insureds in the liability determination because no privity exists between the insureds and the FCIC. *See Reid*, 460 A.2d at 757. Old Republic cannot require the FCIC and the insureds to sort out the morass created by its own inadequate adjustment process.

Old Republic contends that because it is an "agent" of the federal government in the crop insurance program, the FCIC should attempt to recover the overpayments directly from the insureds. This claim misapprehends the nature of the FCIC's right to recover. The FCIC is seeking immediate repayment only of those overpayments caused by Old Republic's negligent or wrongful conduct. Refund of overpayments caused by the fraud or misconduct of insureds is not due until Old Republic recovers these funds from the insureds. *See supra* note 3. Old Republic's failure to fulfill contractual obligations to the FCIC is the basis of the refunds now demanded by the FCIC. Therefore, any purported agency relationship is irrelevant.

■ Old Republic also challenges the application of administrative offset to the overpayments. The applicable regulations provide that "[w]henever feasible, each agency of the Department of Agriculture must use ... administrative offset ... to collect debts due the United States." 7 C.F.R. § 3.23(a) (1990). "Whether collection by administrative offset is feasible is a determination to be made by the creditor on a case-by-case basis ..." 4 C.F.R. § 102.3 (1990). Agencies of the USDA are to consider whether "offset would substantially interfere with or defeat the purposes of a program authorizing payments against which offset is contemplated ..." 7 C.F.R. § 3.23(b)(3) (1990).

Old Republic claims "[t]he overpayment determinations do not constitute 'debts' nor do they in any sense constitute 'just debts', as the FCIC alleged." Appellants' Br. at 18. Because the overpayments are not debts, Old Republic argues, they are not subject to offset. Old Republic fails to provide any authority for this proposition, or even an explanation. We hold that it is without merit.

■ Old Republic also invites this court to reexamine the agency's determination that administrative offset would not "substantially interfere with or defeat the purposes of the program authorizing the payments against which offset is contemplated." 4 C.F.R. § 102.3(a)(2) (1990). Old Republic suggests that collecting the amounts due by administrative offset would compromise the viability of the Federal Crop Insurance Program. Old Republic failed to raise these arguments below. It is fundamental that on appeal to this court a litigant is restricted to those arguments which already have been raised at the district court level. There are narrow exceptions to this rule, "where jurisdictional questions are presented or where, in exceptional cases, justice demands more flexibility." *International Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 225 (7th Cir.1981). The argument Old Republic raises is not jurisdictional, and the circumstances of this appeal are not exceptional. Therefore, we do not rule on the

---

probably contributes to the improper or generous adjustment of loss claims for insureds.

Administrative Record at 05847.

merits of this claim. Further, the district court's order did not include a proviso that the amounts due the FCIC could be recovered through administrative offset. Because no order on the offset is on appeal, we also lack jurisdiction over this claim.[8]

## C.  Due Process Challenges

■ Old Republic argues that even if the FCIC possessed the authority to collect the overpayments, the procedures it used to determine the amounts due were constitutionally inadequate. The governing regulations implementing the Federal Crop Insurance Program provide that disputes arising under reinsurance agreements between the insurers and the FCIC are first to be submitted to the Manager of the FCIC. 7 C.F.R. § 400.80. The regulation further provides that "[a]ny hearing provided by the Corporation will be of an informal nature and the rules of evidence will not apply." *Id.* Given this statutory language, it is axiomatic that the provisions of the Administrative Procedure Act, 5 U.S.C. § 554 (1988) (governing "adjudication required by statute to be determined on the record after opportunity for an agency hearing") do not apply.

The district court stated that:

The FCIC did allow for a hearing on the record—evidenced by the transcript submitted by the insurers as an exhibit. All that the FCIC failed to do was provide and pay for such a record to be compiled. The Insurers were responsible, at their own election and expense, for obtaining a court reporter and having the proceedings transcribed.

746 F.Supp. at 772 n. 4. To the extent that this language implies that all that is necessary for a hearing "on the record" is that a transcription of the proceedings be made, it is in error. "On the record" is a term of art in administrative law, meaning a full trial-like proceeding pursuant to § 556 of the Administrative Procedure Act ("APA"), where the agency's decision is based solely upon papers filed in the proceeding and evidence adduced at the hearing and thereby made part of the record. 5 U.S.C. § 556(e) (1988). 2 K. Davis, Administrative Law § 10.7 (2d ed. 1979). Old Republic was not afforded such a hearing. The regulation required only an informal hearing to resolve disputes between the FCIC and Old Republic. 7 C.F.R. § 400.80.[9] Never-

---

8. We are mildly troubled by the somewhat cavalier fashion in which the agency decided it could offset the amounts due in this case. The regulation in question, 7 C.F.R. § 3.23(a), commits this determination to the broad discretion of the agency contemplating the offset. Such determinations will not be disturbed unless the agency has abused its discretion. *Cardoza v. Commodities Futures Trading Comm'n,* 768 F.2d 1542, 1550 (7th Cir.1985). The regulation does require that the agency consider certain factors. We have found no evidence in the record that the FCIC considered any of these factors when it decided to offset the amounts due. In fact, in its response to the GAO Audit, the FCIC stated: "We also note that the FCIC does not have a systematic method of recovering overpayments. The collection process can be a matter of simply off-setting against amounts routinely due the subject company from expense payments or/ and [sic] reimbursement for losses made." Administrative Record at 05933. The USDA has adopted regulations pursuant to the DCA which require the FCIC to consider a series of factors before using administrative offset to collect debts. 7 C.F.R. § 3.23(b)(3). Although the weighing of these factors is within the discretion of the agency, it must actually weigh them. Failure to do so would be an abuse of discretion and would subject the agency to reversal by a reviewing court on that basis. *Central States Enterprises Inc. v. Interstate Commerce Comm'n,* 780 F.2d 664, 674 (7th Cir.1985).

9. Although we find no reference in the FCIC's brief to the nature of its administrative hearing, during the proceedings, Mr. Grundeman, a representative of the FCIC, stated that

The decision of the hearing officer in this case must be made on evidence which is available to it and on evidence which you have full access to and is a determination of the hearing officer.... It must be based upon the evidence in the record and that that evidence indicates that the amounts are due because, basically, of Old Republic's ... failure to follow the contractual terms.

Administrative Record at 05983. Before making this statement, Grundeman informed Appellants that "this is an informal administrative proceeding.... We cannot base any determination we make here upon anything which you don't have access to and which you have not been allowed an opportunity to rebut or to obtain your information in the same way we did." Administrative Record at 05980.

The implication of this language appears to be that although the hearing was to be informal, the FCIC would base its decision only on mate-

theless, as the district court pointed out, Old Republic did receive many of the procedural benefits of a hearing "on the record." These included notice of the hearing (before the notice was sent, the FCIC sent letters detailing the basis and amount of each claim), an opportunity to participate in the three-day hearing, the right to counsel, an impartial decisionmaker, the right to present oral and written evidence, and the right to present witnesses and informally question any FCIC employees. Despite these procedural protections, Old Republic alleges that the agency's determinations did not satisfy the requirements of due process.

The district court correctly outlined the applicable factors used to evaluate whether an administrative proceeding comports with due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such an interest through the procedures used, and the probable value, if any, of additional or substitute procedures; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural safeguards would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Toney v. Burris*, 881 F.2d 450, 453 (7th Cir.1989); *Miller v. City of Chicago*, 774 F.2d 188, 191 (7th Cir.1985). As the Supreme Court consistently has held, "some kind of hearing is required at some time before a person is finally deprived of his property interests." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 16, 98 S.Ct. 1554, 1564, 56 L.Ed.2d 30 (1978), *citing Wolff v. McDonnell*, 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975–76, 41 L.Ed.2d 935 (1974). Nevertheless, "[t]he opportunity for informal consultation with designated personnel empowered to correct a mistaken determination constitutes a 'due process hearing' in appropriate circumstances." *Id.*, 436 U.S. at 16 n. 17, 98 S.Ct. at 1564 n. 17.

"The Supreme Court has reiterated that 'the judicial model of decisionmaking is neither a required, nor even the most effective method of decisionmaking in all circumstances.'" *Cholewin v. City of Evanston*, 899 F.2d 687, 689 (7th Cir.1990), *citing Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976).

The first *Mathews* factor, the private interest that will be affected, is Old Republic's right to the overpayments made to them by the FCIC, or $337,558.00. Old Republic's interest in these funds, while not trivial, is not so compelling as to require the full panoply of trial-like procedures. Courts have approved more significant administrative deprivations without formal hearings. The procedures afforded Old Republic are far more substantial than those used to determine a police officer's eligibility for injured-on-duty pay. *Cholewin*, 899 F.2d at 687. In *Cholewin*, the officer was notified that his eligibility was being investigated, was informed of the basis of the investigation, and given an interview with the investigating officer where he was represented by counsel. *Id.* at 688–89. This informal interview was the only hearing Officer Cholewin received. Because "notice and an opportunity to respond" are the "essence of due process," *id.*, this court found that the procedures provided were adequate. Old Republic's interest in the funds at issue is no more compelling than a police officer's interest in compensation for an injury he sustains in the course of his duties. Yet the FCIC's procedures were significantly more elaborate.

Similarly, in *Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), the Court held that before the Secretary of the Department of Health, Education, and Welfare could recoup overpayments made under the Social Security Act, it was required to hold "a short personal conference." *Id.* at 697, 99 S.Ct. at 2555. At this conference, the recipient could present evidence and testimony and

---

rials to which both parties had access, and that Old Republic would be able to respond to the

materials during the hearings.

cross-examine witnesses. This conference was decidedly more informal than that accorded Old Republic, and the interests seem quite analogous. Thus, from the standpoint of Old Republic's interest, we hold that the FCIC's procedures were adequate.

The second factor is the risk of an erroneous deprivation given the procedures used and the probable value of alternative procedures. Old Republic finds three particular weaknesses in the administrative hearing provided by the FCIC: the farmer-insureds were not joined by the FCIC, Old Republic was not given subpoena power, and the hearing officer allegedly was biased. Appellants' Br. pp. 35–37.

■■■ Old Republic challenges for the first time on appeal the impartiality of the agency decisionmaker. Appellants' Br. at 33. As we discussed *supra*, at 276, absent extraordinary circumstances or jurisdictional questions, a litigant is restricted on appeal to arguments made below. Old Republic provides no explanation for its failure to raise such a significant allegation in the district court. For these reasons, we do not reach the merits of the claim that the administrative decisionmaker was biased.

■■■ Old Republic argues that the administrative proceeding before the FCIC was constitutionally inadequate because the farmer-insureds were not joined in accordance with Rule 19 of the Federal Rules of Civil Procedure. But in administrative hearings where public rights are being adjudicated, private parties do not have the same right they would have in a civil case to insist upon the joinder of third parties. *See National Licorice Co. v. National Labor Relations Bd.*, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799 (1940); *Coca–Cola Company v. Federal Trade Comm'n*, 475 F.2d 299, 304 (5th Cir.1973); *PepsiCo, Inc. v. Federal Trade Comm'n*, 472 F.2d 179 (2d Cir.1972).

Rule 19 is intended to permit joinder of all materially interested parties to a single lawsuit to protect the parties and avoid waste of judicial resources. Rule 19 provides that a person

who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may ... (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest.

(b) If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Old Republic argues that the farmer-insureds were indispensable parties under Rule 19, and that the administrative action should have been dismissed on that ground. The Federal Rules of Civil Procedure are generally inapplicable to the informal setting of an administrative hearing. As the Supreme Court has stated, "the essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" *Eldridge*, 424 U.S. at 348, 96 S.Ct. at 909, *quoting Joint Anti–Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72, 71 S.Ct. 624, 648–69, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). The Court has adopted Justice Frankfurter's "wise admonishment" that differences be-

tween courts and administrative agencies "preclude wholesale transplantation of the rules of procedure ... which have evolved from the history and experience of the courts." *Id.* Old Republic seeks to graft the provisions of the Federal Rules of Civil Procedure onto the basic protections afforded by due process.

■ Several courts have considered the merits of a demand for joinder in an administrative proceeding. They distinguish between a party's right to demand joinder of a third party, and a third party's right to intervene when its rights will be affected by the adjudication. Although there is a right to intervene, there is no right to demand joinder. In *PepsiCo, Inc. v. Federal Trade Commission*, 472 F.2d 179 (2d Cir.1972), Judge Friendly considered Pepsico's claim that the FTC could not enter orders affecting its contracts with bottlers without joining all the bottlers in the administrative action. Although the case was decided upon jurisdictional grounds, Judge Friendly noted that where the "agency proceedings [are being held] to vindicate public rights." *id.* at 190 n. 13, PepsiCo's right to join indispensable parties is not analogous to its right to join parties in civil cases. Judge Friendly relied upon Supreme Court cases construing the contractual rights of nonparties, where one of the contracting parties is subject to administrative action that might affect the contract and the other is not.

In *National Licorice Co. v. National Labor Relations Board*, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799 (1940), the Court stated that "it is not within the power of any tribunal to make binding adjudication of the rights *in personam* of parties not brought before it by due process of law." *Id.* at 362, 60 S.Ct. at 576. But, it noted, in a proceeding "narrowly restricted to the protection and enforcement of public rights, there is little scope or need for the traditional rules governing the joinder of parties in litigation determining private rights." *Id.* at 363, 60 S.Ct. at 577. Where the rights involved in litigation arise from a contract, a court will not adjudicate the rights of some of the parties to the con-

tract if the others are not before it. But, the Court explained, different considerations apply,

> even in private litigation where the rights asserted arise independently of any contract which an adverse party may have made with another, not a party to the suit, even though their assertion may affect the ability of the former to fulfill his contract. The rights asserted in the suit and those arising upon the contract are distinct and separate, so that the court may, in a proper case, proceed to judgment without joining other parties to the contract....

*Id.*

Such is the case here—Old Republic's contracts with the farmer-insureds are separate and distinct from Old Republic's contracts with the FCIC. *See* discussion *supra* at 10. The Fifth Circuit agreed with Judge Friendly's reading of *National Licorice*, that parties before an agency proceeding have no right to demand that parties be joined in the proceeding, although parties whose rights would be adjudicated have a right to intervene. *Coca-Cola Company v. Federal Trade Comm'n*, 475 F.2d 299, 304 (5th Cir.1973). If the farmer-insureds' rights to the payments Old Republic made to them were being adjudicated, they would have a right to intervene, even though Old Republic would have no right to demand their joinder. Old Republic does not argue that the rights of the farmer-insureds are affected by the FCIC's proceedings. The administrative ruling merely determined the extent of the FCIC's overpayments to Old Republic caused by Old Republic's own negligence and/or breach of contract. Old Republic is merely seeking to dilute its own liability for these errors by involving the insureds.

■ Based upon our reading of *National Licorice* and its progeny, we hold that a party to an administrative proceeding has no right to demand the presence of another under the provisions of Fed. R.Civ.P. 19(a). Moreover, as the district court properly found, even if Old Republic had such a right, the farmer-insureds are

not indispensable parties under Fed. R.Civ.P. 19(a).

■ Old Republic asserts that its inability to subpoena witnesses (such as the farmer-insureds) made the administrative hearing constitutionally inadequate. "Subpoena power is not an intrinsic feature of the administrative process, and courts cannot engraft subpoena authority onto an agency's charter from Congress." *Johnson v. United States*, 628 F.2d 187, 193 (D.C.Cir.1980). The FCIC does not have subpoena power, and it so informed Old Republic before the evidentiary hearings began. Administrative Record at 05945. In *Johnson*, a government employee was terminated based in part upon information provided by three non-government employees. The government employer's (the Bureau of Alcohol, Tobacco and Firearms) (the Bureau) regulations, consistent with its lack of subpoena authority, only provided for it to produce its own employees at termination hearings. Johnson requested that the Bureau compel the three disinterested witnesses to appear at his hearing. But because the Bureau lacked subpoena authority, it refused his request. *Id.* at 193–94. Johnson challenged the sufficiency of the termination proceeding on due process grounds based upon this refusal. The court, applying the *Mathews* factors, determined that the procedures were adequate. It found that "due process does not mandate the availability of compulsory process to defend against a dismissal from government employment" despite the employees "significant" interest. *Id.* at 194.

The due process claim in *Johnson* is stronger than Old Republic's claim in the case at bar. The evidence provided by the unavailable witnesses in *Johnson* was more significant to the Bureau's decision than the evidence Old Republic claims is in the hands of the farmer-insureds. Mr. Johnson attempted and was unable to present that evidence. Here, Old Republic did not even attempt to call any of the farmer-insureds which it claims were so vital to a fair adjudication of the reinsurance contracts and overpayments. Moreover, the *Johnson* court noted that termination hearings revolve around factual issues that "would be less prone to error if live witnesses could be produced by the employee." *Id.* In the instant case, the issues are primarily ones of contract interpretation and documentary evidence where live testimony would be of less obvious import. The evidence relied upon by the FCIC in calculating the overpayments was primarily documentary.[10]

Old Republic cannot point to any attempt to produce evidence or testimony during the hearings that was frustrated by the lack of compulsory process. As the district court pointed out, Old Republic has not explained how compulsory process would have made the FCIC hearing more reliable. 746 F.Supp. at 774. Old Republic's only evidence that the hearing was unreliable is that the amount of calculated overpayment changed over the course of the government's investigation and hearings. In other words, because the final numbers were different from the preliminary ones, the hearing proceedings were unreliable. Appellants' Br. at 31. This argument ignores the fundamental purpose of adjudication. Just because the FCIC did not rubber stamp its preliminary findings after it completed the hearings with Old Republic does not mean Old Republic was deprived of due process. This argument seems particularly strained considering that the FCIC's adjudication resulted in a decrease in Old Republic's liability—from $736,843.00 to $337,558.00.

Old Republic also complains that the proceedings were too hurried, and request a

---

10. Appellants imply that because its adjustors made some of their decisions "during a visual appraisal" in the field, Appellants' Br. at 31, a review of the adjustors' work based only on documentary evidence is inherently deficient. The predominant errors in the dispute, however, involve issues such as quality adjustment factors, which are done pursuant to an FCIC manual (Administrative Record at 060006); calculations of pack factors also done pursuant to manual (Administrative Record at 060013); the transposition of numbers on adjustment reports (Administrative Record at 060012); and incorrect risk classifications (Administrative Record 060047, 051).

three-week adjudication. Yet during the proceedings its representatives complained they were taking too long. *See, e.g.,* Administrative Record 06011a [11] (Old Republic's Rep: "I ought to ask ... if this is going faster ... I can have a temper tantrum over here if you want to delay it. FCIC's Rep: No, as far as I'm concerned, I was worrying we were going to be here all next week, too."). In light of this and other complaints (*see* Administrative Record at 05386) made during the hearings, Old Republic's argument before this court that it was entitled to a longer hearing is not well taken. We simply find no merit in Old Republic's specific objections to the FCIC's administrative hearings.

Old Republic has failed to support its broad assertion that the FCIC's procedures were inherently unreliable. Old Republic received many of the procedural benefits of a formal hearing on the record under the APA, 5 U.S.C. §§ 554–557. It was given notice of the proceedings, the opportunity to present oral and written evidence, to question FCIC employees regarding their findings, and was represented by counsel. Even if the presence of the farmer-insureds might have contributed to the accuracy of the FCIC's determinations, the risk of error must be balanced against the burden of further procedures. *Mathews,* 424 U.S. at 347, 96 S.Ct. at 908, *Continental Training Servs., Inc. v Cavazos,* 893 F.2d 877, 893–94 (7th Cir.1990); *Miller v. City of Chicago,* 774 F.2d 188, 194 (7th Cir.1985). In its briefs, Old Republic suggests that a formal trial-like proceeding involving all the farmer-insureds would be required to comport with its vision of due process. The administrative burdens associated with such a hearing are obvious, particularly when arbitration is the usual means of resolving disputes between insurers and reinsurers. 746 F.Supp. at 775 n. 7. Old Republic's criticism seems particularly hollow in light of its complaints during the administrative hearings that the process was taking too long.

Moreover, the government's interests, including the fiscal and administrative burdens involved in the protracted hearing Old Republic requests, must be weighed. The government also has a strong interest in the prompt return of erroneously paid funds in order to ensure the viability of the Federal Crop Insurance Program. Finally, the Supreme Court has directed this court to "give substantial weight to the good faith judgments of the individuals charged by Congress with the administration of programs." *Mathews,* 424 U.S. at 349, 96 S.Ct. at 909. Based upon these considerations, we determine that the FCIC procedures were constitutionally adequate.

### D. The Merits of the FCIC's Findings

Because we hold that the FCIC had the authority to collect the overpayments, and that its procedures for determining the amount of the overpayments were constitutionally adequate, we now examine the FCIC's determination on the merits.

The FCIA does not contain a standard of review for its administrative hearings, therefore, the standard of review set forth in the APA applies. This standard is whether the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) (1988). *See also Illinois v. United States,* 668 F.2d 923, 930 (7th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982). When reviewing agency action under the arbitrary and capricious standard

> the court must consider whether the decision was based on consideration of the relevant factors and whether there has been a clear error of judgment. ... The court is not empowered to substitute its judgment for that of the agency.

*United States v. An Article of Device ... Diapulse,* 768 F.2d 826, 830 (7th Cir.1985), *quoting Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). *See also Central States Enterprises, Inc. v. Inter-*

**11.** In the numbering of the record a page was skipped. This reference is to the page between 06011 and 06012.

*state Commerce Comm'n,* 780 F.2d 664, 674 (7th Cir.1985).

In the instant case, the FCIC reviewed the audit reports of the GAO and the OIG, and then performed its own audits of the claims paid to Old Republic. After these preliminary findings, FCIC notified Old Republic of its determinations and their factual basis. Finally, at a three-day hearing, Old Republic and FCIC representatives reviewed all fifty claims before the FCIC's hearing officer, discussing in detail Old Republic's alleged errors and the facts underlying each claim. Based upon these procedures, the hearing officer cut Old Republic's liability by more than half—from $736,843.00 to $337,558.00. We agree with the district court's conclusions that, based upon a review of the FCIC's actions, its determinations were supported by the facts before it and proper application of FCIC regulations. Therefore, we find that the FCIC's conclusions were neither arbitrary and capricious, nor an abuse of discretion.

### III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.