**UNITED STATES of America, Plaintiff,**

v.

**Keith A. KOTTCAMP, Lynn A. Dittman aka Lynn A. Kottcamp, and Dekalb Equipment Leasing Corp., Defendants.**

No. 3:91CV572AS.

U.S. District Court,
N.D. Indiana,
South Bend Division.

May 10, 1993.

Clifford D. Johnson, South Bend, for plaintiff.

Byron Tinkey, Rochester, Alan D. Burke, Rochester, for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

The United States, acting through the Farmers Home Administration ("FmHA"), has brought an action for foreclosure in this court. In this case, the United States has filed a motion for summary judgment against the defendants Keith A. Kottkamp, Lynn A. (Kottkamp) Dittman, and Dekalb Equipment Leasing Corporation. The United States has also filed a motion for default judgment against the defendants Sadler's Service Center and Michael Wolford.

### I. Facts

On August 27, 1985, and May 29, 1986, Keith A. Kottkamp ("Kottkamp") and his wife, Lynn A. Kottkamp (now Dittman due to remarriage following divorce), executed and delivered a real estate mortgage to the FmHA (Memorandum in Support of the United States' Motion for Summary and Default Judgment ["U.S. Memorandum"] at 1). The real estate is described as R.R. # 2, Box 109, Kewanna, Indiana. The Kottkamps also granted the United States security interests in all farm equipment, inventory, and livestock (U.S. Memorandum at 2). On April 6, 1989, the FmHA sent the defendants the Notification of Offer to Restructure Debt. On July 10, 1989, the FmHA held an office meeting with Mr. Kottkamp (National Appeals Staff letter of June 16, 1990 ["NAS"] at 1). During that meeting, the parties discussed the pending Kottkamp divorce action (NAS at 1). The FmHA sent Mr. Kottkamp letters dated October 30, 1989, and November 14, 1989, requesting he contact the County Office and reschedule his loans (NAS at 1). After receiving no response, the FmHA decided to deny the defendant primary loan servicing (NAS at 1).

Kottkamp appealed to the National Appeals Staff and on June 16, 1990, the hearing officer overturned the FmHA's decision, finding the FmHA had failed to follow necessary notice requirements. The hearing officer stated that the FmHA was on notice that the Kottkamps were in the process of divorcing and that address changes were probable. The officer also found that there was no effort to contact Kottkamp by telephone or in person and that other procedural steps had been omitted from the record (NAS at 1–2).

From July to October of 1990, Kottkamp submitted material to the FmHA regarding restructuring of his loan. On October 26, 1990, the FmHA issued a notice to the Kottkamps of its intent to accelerate his loans (Exhibit 3). Kottkamp's attorney received this notice on October 30, 1990, and Kottkamp refused to sign for his copy (Exhibit 4). Kottkamp filed an appeal on December 14, 1990. On January 24, 1991, the FmHA terminated Kottkamp's appeal rights because he had failed to appeal within thirty days (Exhibit 4).

### II. Standard of Analysis for Summary Judgment

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705*, 984 F.2d 762, 764 (7th Cir.1993).

A thorough discussion of Rule 56 by the Supreme Court of the United States can be found in a trilogy of cases decided in 1986. *See, Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986) [1]; and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56). A material question of fact is a question which will be outcome determinative of an issue in the case. *Wainwright Bank v. Railroadmens Federal Sav.*, 806 F.2d 146 (7th Cir.1986). The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.' " *Id.* The nonmoving party cannot rest on its pleadings, *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir.1991), or upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir.1992). "The days are gone, if they ever existed, when the nonmoving party could sit back and simply poke holes in the moving party's summary judgment motion." *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990).

During its analysis, this court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252–255, 106 S.Ct. at 2512–14.

For academic insight into *Celotex* and *Anderson*, see Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court*, 116 F.R.D. 183, 194 (1987), where the author states:

> The recent Supreme Court cases likely require that summary judgment be more readily granted.... This emerging trend signals a new era for summary judgment, one in which the old presumptions are giving way to a policy of balancing and efficiency, and the mechanism is more appropriate to double as a sufficiency motion—allowing some sort of trial itself on the paper record.

More recently Childress has written that *Celotex* and *Anderson* clarify that Rule 56 motions

> should not be hesitantly granted when appropriate.... Any litigant dealing with summary judgment must be aware of this new trend, the Court's cases, their application in each circuit, and the direction they portend. Pretrial practice is a new ballgame.

Childress, *A Standards of Review Primer: Federal Civil Appeals*, 125 F.R.D. 319, 343 (1989).

Recent object lessons applying these ideas are found in *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 370–371 (7th Cir.1992); *Karazanos v. Navistar Intern. Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); and *Old Republic Ins. Co. v. Federal Crop Ins. Corp.*, 947 F.2d 269, 273–274 (7th Cir.1991).

This action involves the Farmers Home Administration; thus, it is governed by the procedural requirements of the Agricultural Credit Act of 1981, 7 U.S.C. § 1981a *et seq.*, regarding the administration and collection of delinquent loans, cited nowhere in the complaint and motions filed by the United States:

> The basic objective of the OL [Operating] loans program is to provide credit and management assistance to farmers and ranchers to become operators of family-sized farms or continue such operations when credit is not available elsewhere.

---

1. For the judicial epilogue of *Celotex*, see *Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33

(D.C.Cir.1987), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).

FmHA assistance enables family-farm operators to use their land, labor and other resources and to improve their living and financial conditions so that they can obtain credit elsewhere.

7 C.F.R. § 1941.2 (1992).

The issue as to which procedural requirements must be met by the FmHA in administrating its loans program has been the focus of wide-spread litigation. In a landmark decision, the court in *Curry v. Block*, 541 F.Supp. 506 (S.D.Ga.1982), enjoined the FmHA from foreclosing on farm program loans prior to giving personal notice of the farmers' rights to apply for deferral relief under § 1981a and the opportunity for a hearing. The court characterized the agency's actions as involving more than borrowing on the part of farmers, and found that 7 U.S.C. § 1981a imposed procedural duties on the FmHA:

> [F]ederal intervention in agricultural credit shows a long history of farmer loans designed to aid the family farmer who cannot obtain credit from a different source. Thus, as with most programs spawned in the Depression years (the roots of todays [sic] program lie in the Bankhead–Jones Tenant Act of 1937 and not the Homestead Act of 1863), the object of the legislation is to aid the "underprivileged" farmer, and is therefore a form of social welfare legislation.

*Curry v. Block*, 541 F.Supp. 506, 511 (S.D.Ga. 1982).

The court in *Curry* stated that the Congressional intent behind the program "refutes the notion that the program is strictly a business venture," since it requires personnel who are " 'adequately prepared to understand the particular needs and problems of farmers' " and that " 'a high priority is placed on keeping existing farm operations operating.' " *Curry*, 541 F.Supp. at 513, quoting Pub.L. No. 95–334, Title I § 126, 92 Stat. 429 (August 4, 1978), *reprinted in*, Congressional Findings, 7 U.S.C. § 1921 (Supp.1982).

Similar litigation followed in other jurisdictions, including the Seventh Circuit, *United States v. Markgraf*, 736 F.2d 1179 (7th Cir. 1984), *cert. dismissed*, 469 U.S. 1199, 105 S.Ct. 1154, 84 L.Ed.2d 308 (1985). Finally,

Congress provided for procedural requirements regarding loan servicing and restructuring by the FmHA by amending the Consolidated Farm and Rural Development Act, codified in the Agricultural Credit Act of 1987. In § 1981d, Congress created the "cornerstone of the new amendments [which] is the requirement that Farmers Home Administration provide each distressed borrower with a comprehensive notice describing the various loan servicing programs and procedures that may be available to the borrower." Randy Rogers, Collier Farm Bankruptcy § 1.02[3] (1992). Section 1981d provides for extensive notice to delinquent borrowers:

(a) Requirement

> The Secretary shall provide notice by certified mail to each borrower who is at least 180 days delinquent i the payment of principal or interest on a loan made or insured under this chapter.

(b) Contents

> The notice required under subsection (a) of this section shall—
>
> (1) include a summary of all primary loan service programs, preservation loan service programs, debt settlement programs, and appeal procedures, including the eligibility criteria, and terms and conditions of such programs and procedures;

(c) Contained in regulations

> All notices required by this section shall be contained in the regulations implementing this chapter.

(d) Timing

> The notice described in subsection (b) of this section shall be provided—
>
> (1) at the time an application is made for participation in a loan service program;
>
> (2) on written request of the borrower; and
>
> (3) before the earliest of—
>
> > (A) initiating any liquidation;
> >
> > (B) requesting the conveyance of security property;
> >
> > (C) accelerating the loan;
> >
> > (D) repossessing property;
> >
> > (E) foreclosing on property; or

(F) taking any other collection action.
(e) Consideration of borrowers for loan service programs

The Secretary shall consider a farmer program borrower for all loan service programs if, within 60 days after receipt of the notice required in this section or, in extraordinary circumstances as determined by the applicable State director, after the 60–day period, the borrower requests such consideration in writing. In considering a borrower for loan service programs, the Secretary shall place the highest priority on the preservation of the borrower's farming operations.

7 U.S.C. § 1981d (1988 & Supp.1993).

Similarly elaborate procedural requirements apply to notifying a borrower of his right to appeal an adverse decision by the FmHA and of the necessary steps to initiate an appeal:

The Secretary shall provide an applicant for or borrower of a loan, or an applicant for or recipient of a loan guarantee, under this chapter who has been directly and adversely affected by a decision of the Secretary made under this chapter (hereafter in this section referred to as the "appellant") with written notice of the decision, an opportunity for an informal meeting, and an opportunity for a hearing with respect to such decision, in accordance with regulations issued by the Secretary consistent with this section.

7 U.S.C. § 1983b(a) (1988).

Exhibit A in the regulations to this code section constitutes a notice to delinquent farm borrowers. It outlines all the procedural steps for taking an appeal, including a time deadline: "If you ask for just the appeal hearing, you must return the 'Response Form' to FmHA within 30 days of the date you received the letter." 7 C.F.R. § 1951, Subpt. S, Exh. A (1992).

### III. Analysis

The issue before this court is whether the FmHA has met the procedural requirements outlined in the regulations promulgated to ensure farmers' rights. The plaintiff argues that since it has complied with all steps, this court should grant summary judgment.

Kottkamp claims that the agency failed to make all the options prescribed by FmHA available to him.

There is no question but that the FmHA initially failed to give proper notice to the borrower of its intention to take action regarding his default. The hearing officer overturned that decision by the FmHA. However, after Kottkamp had submitted all his documents, the agency notified him of its adverse decision on a form that mirrors the language in § 1951 of the implementing regulations. Their correspondence even has the regulation number, 1951–S, Exhibit A to Subpart S, on its heading (Exhibit 3). At least on this round, the FmHA did adequately notify the borrower by sending this document to his attorney.

Kottkamp is unable to refute the claim that he missed the thirty-day deadline, but has submitted correspondence from the FmHA sent to him in error on November 1, 1991. This does not vitiate Kottkamp's failure to timely file his appeal. All the procedural requirements that have been promulgated to protect borrowing farmers cannot circumvent the result of a failure to meet a deadline that was clearly conveyed. There is also no suggestion here of a helpless farmer trying to wade through the thicket of bureaucratism by himself, as Kottkamp was represented by counsel who was served with all the documents, Bryon Tinkey. Mr. Tinkey failed his client in two instances. First, he did not file a timely appeal of the FmHA's decision. Second, he did not take subsequent remedial measures. When the FmHA notified Kottkamp that it would not grant his appeal because he had missed the deadline, he was told that if "the reason for not responding within 30 days was outside your control, please advise this office of the circumstances, and you appeal will be reconsidered" (Exhibit 4). This advisement had to be postmarked within 10 calendar days from the date of the letter (Exhibit 4). Tinkey failed to take this step.

In *United States v. Selenske,* (originally decided by unpublished order under Circuit Rule 53), *aff'd per curiam,* 882 F.2d 220 (7th Cir.1989), the United States filed a foreclosure suit against Selenske under 28 U.S.C.

§ 1345 on behalf of the FmHA. Selenske had defaulted on secured loans obtained from the FmHA. *Selenske*, 882 F.2d at 220. The district court had granted summary judgment:

Although Selenske received notice that he had to submit documents or affidavits supporting his claim under Fed.R.Civ.P. 56(e), he did nothing. Summary judgment against him was therefore proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir.1988) Selenske now asks this court to vacate the district court's order in light of the Agricultural Credit Act of 1987 (Publ.L. 100–223), codified at 7 U.S.C. §§ 1981–2001.

*Selenske*, 882 F.2d at 221.

Selenske appealed, asking the court to apply the Agricultural Credit Act of 1987. The court of appeals held that the statute did not provide for retroactive application, but its analysis applies to the case before this court:

The Act permits qualified (but delinquent) borrowers to

restructure loans before foreclosure. 7 U.S.C. §§ 1991(b), 2001. The Act also placed a moratorium on "collection activities" such as initiating foreclosure or liquidation before the Secretary of Agriculture issued final regulations to implement the new debt restructuring program. Pub.L. 100–233 § 615; 7 U.S.C. § 2001(g).

*Selenske*, 882 F.2d at 221.

In the case before this court, the procedural requirements of the Agricultural Credit Act of 1987 do apply, but the result is the same. It seems harsh to deny Kottkamp his appeal, especially in light of the fact that the FmHA itself violated procedural requirements in an earlier denial of assistance. It is also ironic that Kottkamp should be held to strict deadlines by an agency whose own recordkeeping is such that it kept sending Kottkamp assistance forms after it had terminated his rights and was taking steps to finally accelerate his loans.

The record in this case is evidence of the correctness of what Dr. Parkinson said about bureaucracies. Under the best of motivation, they grow geometrically. In that process, they also tend to a robot kind of mindless action. In this case, it is all too easy to catalogue the faults and mistakes of the bureaucrats in the FmHA who admittedly, but perhaps unintentionally sent mixed signals to these defendants who were in desperate financial circumstances. All of this said, as to the fault that lies at the feet of the FmHA, the plain and unpleasant fact is that these defendants cannot and have not fulfilled their financial obligations. On the basis of the record, it would appear that any hope of their doing so is extremely remote. In every jury case, now numbering more than four hundred, that has been tried by this court during the last twenty years, there has been an instruction to the effect that a verdict cannot be based on sympathy. The same applies to decisions in civil cases by the court sitting without a jury. This court has the greatest sympathy and indeed empathy for the financial plight of these defendants and possesses a value system that places high priority on the way of life of the idealized farmer. However, it can be cruel to hold out hope that is beyond all realistic expectations. This court cannot wave a magical judicial wand over the economic plight of these farm operators and cure all of their economic ills. As a matter of fact, the federal legislation in question, however well intended, cannot accomplish that end. As sad and unfortunate as that may be, these defendants have wholly and completely failed to live up to their financial obligations and there is nothing in the federal statute which now provides for their salvation and there is nothing that this court can do to breathe new life into their saddened economic plight.

It is therefore the very unpleasant task of this court to grant the relief the plaintiff has requested in this case. The plaintiff's motion for summary judgment against Keith Kottkamp and Lynn A. (Kottkamp) Dittman is granted. Regarding the plaintiff's motion for default judgment, Michael Wolford and Sadler's Service were served with process, but failed to plead responsively as required by Fed.R.Civ.P. 8. The clerk entered default against these defendants on March 29, 1992. Pursuant to Fed.R.Civ.P. 55, the plaintiff's

motion for default judgment is granted.  **IT IS SO ORDERED.**